APPALACHIAN POSTER ADVERTISING COMPANY, INC., PETITIONER v. JAMES E. HARRINGTON, AS SECRETARY OF TRANSPORTATION OF THE STATE OF NORTH CAROLINA, RESPONDENT

No. 9410SC477

(Filed 5 September 1995)

**Highways, Streets, and Roads § 32 (NCI4th)— roadside sign erected prior to enactment of OACA—no authority of Department of Transportation to regulate**

The Department of Transportation had no authority to promulgate any regulation with respect to petitioner's particular sign which was within 660 feet of an interstate, was located in a noncommercial/nonindustrial area, and was undisputedly a noncon-

APPALACHIAN POSTER ADVERTISING CO. v. HARRINGTON

[120 N.C. App. 72 (1995)]

forming sign which was in existence prior to the enactment of the Outdoor Advertising Control Act. N.C.G.S. §§ 136-130, 136-133.

**Am Jur 2d, Advertising § 25.**

**Municipal power as to billboards and outdoor advertising. 58 ALR2d 1314.**

**Classification and maintenance of advertising structure as nonconforming use. 80 ALR3d 630.**

**Validity and construction of state or local regulation prohibiting the erection or maintenance of advertising structures within a specified distance of street or highway. 81 ALR3d 564.**

Judge LEWIS dissenting.

Appeal by petitioner from judgment and order entered 13 December 1993 by Judge Henry W. Hight, Jr., in Wake County Superior Court. Heard in the Court of Appeals 2 February 1995.

*Wilson & Waller, P.A., by Betty S. Waller and Brian E. Upchurch, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth N. Strickland and Associate Attorney General Sarah A. Fischer, for respondent-appellee.*

GREENE, Judge.

Appalachian Poster Advertising Company, Inc. (petitioner) appeals from the trial court's 13 December 1993 decision to affirm the North Carolina Department of Transportation's (the Department) revocation of a roadside sign permit issued to petitioner.

The undisputed facts are as follows: On 13 June 1973, the Department issued an outdoor advertising permit to petitioner for a "nonconforming, pre-existing sign" adjacent to Interstate 40 in McDowell County. The sign is located in a noncommercial/nonindustrial area within 660 feet of the interstate and was in existence prior to enactment of the Outdoor Advertising Control Act (the OACA). Petitioner's employees removed the sign face, repainted it, and altered it to conform with the requirements of a new advertiser, Western Steer/Econolodge, in September 1985. Originally, the sign was 35 feet long and 20 feet high for a total of 700 square feet. The

1985 modification changed the sign to 47.5 feet long and 14 feet high for a total of 665 square feet. Petitioner added new cross braces to the sign and replaced the support poles which were showing signs of age and wind stress. In addition, petitioner moved the sign back approximately three to five feet.

On 28 September 1985, the district engineer for the Department observed the new alterations to the sign. The engineer inspected the sign and discovered: (1) the structure was five feet farther from the highway than the permit had originally allowed; (2) the new poles were three feet taller than the original poles; and (3) the message on the sign's face had completely changed.

The district engineer notified petitioner on 8 October 1985 that the sign permit had been revoked because the alterations of the structure "are in violation of the Outdoor Advertising Control Act and rules and regulations promulgated thereto." Petitioner appealed the revocation to the Secretary of the Department, who affirmed the revocation by letter dated 16 December 1985. In the letter, the Secretary stated that regulations "19A NCAC 2E.0210(6) & (12)," promulgated by the Department pursuant to the OACA, provided that the district engineer shall revoke a sign permit for the rebuilding of a sign. Petitioner petitioned the Wake County Superior Court pursuant to N.C. Gen. Stat. § 136-134.1 for review of the decision. By order dated 2 July 1987, the trial court upheld the decision of the Secretary. Petitioner appealed. In *Appalachian Poster Advertising Co., Inc. v. Harrington*, 89 N.C. App. 476, 366 S.E.2d 705 (1988), we remanded the case to the trial court for more specific findings of fact and conclusions of law. Without hearing additional arguments or evidence, the trial court entered an order on 13 December 1993 determining that: (1) petitioner replaced the original sign with a new sign which was not substantially the same as the original sign; (2) the Department had properly revoked petitioner's outdoor advertising permit pursuant to the Outdoor Advertising Control Act; (3) the Department had the authority to revoke the permit; and (4) the regulations upon which the revocation was based were not unconstitutional. Petitioner appeals from the 1993 judgment.

The dispositive issue presented is whether the Department has the authority to promulgate any regulation with respect to petitioner's particular sign (displaying an advertisement for Western Steer/Econolodge) which is within 660 feet of an interstate, is located in a noncommercial/nonindustrial area, and is undisputed to be a non-

conforming sign which was in existence prior to the enactment of the OACA.

Assuming petitioner's rebuilding of the sign violated the Department's regulations, we agree with petitioner that the regulations did not apply to petitioner's sign. A study of N.C. Gen. Stat. § 136-130, the only source of authority for the enactment of rules and regulations with respect to outdoor signs, reveals that the petitioner's sign in question is not included within those signs that can be regulated by the Department. Section 136-130 provides:

> The Department of Transportation is authorized to promulgate rules and regulations in the form of ordinances governing:
>
> (1) The erection and maintenance of outdoor advertising permitted in G.S. 136-129,
>
> (2) The erection and maintenance of outdoor advertising permitted in G.S. 136-129.1,
>
> (2a) The erection and maintenance of outdoor advertising permitted in G.S. 136-129.2,
>
> (3) The specific requirements and procedures for obtaining a permit for outdoor advertising as required in G.S. 136-133 and for the administrative procedures for appealing a decision at the agency level to refuse to grant or in revoking a permit previously issued, and
>
> (4) The administrative procedures for appealing a decision at the agency level to declare any outdoor advertising illegal and a nuisance as pursuant to G.S. 136-134, as may be necessary to carry out the policy of the State declared in this Article.

N.C.G.S. § 136-130 (1993). Petitioner's sign does not fall within Section 136-129.1 because it is within 660 feet of I-40 and does not fall within Section 136-129.2 because it is not adjacent to scenic highways, State and National Parks, or historic areas. The sign was not erected or maintained in violation of state law and therefore is not illegal. N.C.G.S. § 136-128(0.2) (1993) (defining illegal). Therefore, the Department has no authority to promulgate rules applying to petitioner's sign under Sections 136-130(2), 136-130(2a) or 136-130(4).

Section 136-129 provides the following:

> No outdoor advertising shall be erected or maintained within 660 feet of the nearest edge of the right-of-way of the interstate or

primary highways in this State so as to be visible from the main-traveled way thereof after the effective date of this Article as determined by G.S. 136-140, except the following:

(1) Directional and other official signs and notices, which signs and notices shall include those authorized and permitted by Chapter 136 of the General Statutes, which include but are not limited to official signs and notices pertaining to natural wonders, scenic and historic attractions and signs erected and maintained by a public utility, electric or telephone membership corporation, or municipality for the purpose of giving warning of or information as to the location of an underground cable, pipeline or other installation.

(2) Outdoor advertising which advertises the sale or lease of property upon which it is located.

(2a) Outdoor advertising which advertises the sale of any fruit or vegetable crop by the grower at a roadside stand or by having the purchaser pick the crop on the property on which the crop is grown provided . . . .

(3) Outdoor advertising which advertises activities conducted on the property upon which it is located.

(4) Outdoor advertising, in conformity with the rules and regulations promulgated by the Department of Transportation, located in areas which are zoned industrial or commercial under authority of State law.

(5) Outdoor advertising, in conformity with the rules and regulations promulgated by the Department of Transportation, located in unzoned commercial or industrial areas.

N.C.G.S. § 136-129 (1993). This section specifies the signs which are permitted to be erected and maintained in North Carolina and petitioner's sign is not included among those permitted. Thus, the Department had no authority to promulgate rules or regulations that apply to petitioner's sign under Section 136-130(1).

N.C. Gen. Stat. § 136-133 provides the following:

No person shall erect or maintain any outdoor advertising within 660 feet of the nearest edge of the right-of-way of the interstate or primary highway system, except those allowed under G.S. 136-129, subdivisions (2) and (3) in this Article, or beyond

660 feet of the nearest edge of the right-of-way of the interstate or primary highway system, except those allowed under G.S. 136-129.1, subdivisions (2) and (3), without first obtaining a permit from the Department of Transportation . . . . The permit shall be valid until revoked for nonconformance with this Article or rules and regulations promulgated by the Department . . . .

N.C.G.S. § 136-133 (1993). This section requires a person seeking to erect or maintain some of the outdoor advertising signs permitted under Section 130-129 to receive a permit, from the Department, before construction. Because petitioner's sign does not fall within any of the signs permitted to be erected and maintained under Section 130-129, Section 136-133 does not apply to petitioner's sign. Therefore, Section 136-130(3) does not give the Department the authority to promulgate rules governing petitioner's sign.[1]

If the Department cannot apply the rules or regulations it promulgates to signs such as petitioner's which is a nonconforming, pre-existing sign, the Department argues "any permit holder in a zoned agricultural/residential area with a nonconforming or 'grandfathered' sign would have carte blanche to violate all outdoor advertising regulations." The OACA, however, specifically instructs the Department on how to deal with such signs:

The Department of Transportation is authorized to acquire by purchase, gift, or condemnation all outdoor advertising and all

---

1. We reject the argument, adopted by the dissent, that the "petitioner essentially erected a new sign" when it repaired the sign, losing its status as a nonconforming sign and was therefore subject to the permitting process of N.C.G.S. § 136-130 and N.C.G.S. § 136-133. Although the Legislature likely could have promulgated a constitutional statute limiting the number of years the nonconforming signs could remain in place or limiting the extent of repairs to the signs, see State v. Joyner, 286 N.C. 366, 373, 211 S.E.2d 320, 324-25 (approving use of time limits on nonconforming uses), appeal dismissed Joyner v. North Carolina, 422 U.S. 1002, 45 L. Ed. 2d 666 (1975); Douglas Hale Gross, Annotation, Zoning: Right to Repair or Reconstruct Building Operating as Nonconforming Use, After Damage or Destruction by Fire or Other Casualty, 57 A.L.R. 3d 419 (1974) (statutes serving to prohibit restoration of nonconforming structures are generally held constitutional), it did not do so. In the absence of such a statute, signs retain their nonconforming status as long as the "nature and extent of the use . . . remain[s] the same as it was before the enactment" of the Outdoor Advertising Control Act. Timothy E. Travers, Annotation, Classification and Maintenance of Advertising Structure as Nonconforming Use, 80 A.L.R. 3d 630, 657 (1977). In this case there is no suggestion that the "nature and extent of the use" of the sign was altered. Furthermore to permit the Department to require removal of a reconstructed nonconforming sign would violate the specific legislative mandate that compensation be made for the removal of nonconforming signs. N.C.G.S. § 136-131.

property rights pertaining thereto which are prohibited under the provisions of G.S. 136-129, 136-129.1 or 136-129.2, provided such outdoor advertising is in lawful existence on the effective date of this Article as determined by G.S. 136-140, or provided that it is lawfully erected after the effective date of this Article as determined by G.S. 136-140.

N.C.G.S. § 136-131 (1993). This section also provides for just compensation to be paid to the owner of the outdoor advertising sign. *Id.* Therefore, with respect to nonconforming, pre-existing advertising signs, this section and the corresponding federal act, 23 U.S.C. § 131, specifically require cash compensation to sign owners whose signs are removed pursuant to those acts. *Givens v. Town of Nags Head,* 58 N.C. App. 697, 700-01, 294 S.E.2d 388, 390, *cert. denied,* 307 N.C. 127, 297 S.E.2d 400 (1982).

Because "[t]he agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislative grant of authority," *In re Community Assoc.,* 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980), the Department only had the authority under the OACA "to acquire by purchase, gift, or condemnation" petitioner's nonconforming, pre-existing sign, and did not have the authority to require removal of petitioner's billboard pursuant to Section 136-130 without just compensation. For these reasons, the decision of the trial court to affirm the Department's revocation of petitioner's permit is reversed. Because of our decision on this issue in favor of petitioner, we need not address petitioner's remaining arguments.

Reversed.

Judge COZORT concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting.

I disagree with the majority's conclusion that the Department of Transportation (hereinafter "Department") does not have the authority to regulate petitioner's sign.

N.C.G.S. section 136-130 confers permitting power, specifically authorizing the Department to promulgate rules and regulations governing, *inter alia,*:

APPALACHIAN POSTER ADVERTISING CO. v. HARRINGTON

[120 N.C. App. 72 (1995)]

(3) The specific requirements and procedures for obtaining a permit for outdoor advertising as required in G.S. 136-133 and for the administrative procedures for appealing a decision at the agency level to refuse to grant *or in revoking a permit previously issued,* . . . .

N.C.G.S. § 136-130 (1993) (emphasis added). N.C.G.S. section 136-133, referenced in the authorizing section above, further delineates this permitting power:

No person *shall erect or maintain* any outdoor advertising . . . without first obtaining a permit from the Department . . . pursuant to the procedures set out by rules and regulations promulgated by the Department . . . . The permit shall be valid until revoked for nonconformance with this Article or rules and regulations promulgated by the Department . . . thereunder.

N.C.G.S. § 136-133 (1993) (emphasis added). Read together, these two sections grant the Department the authority to grant new permits, to revoke existing permits, and to promulgate rules and regulations for this purpose. As discussed below, instead of making repairs to an existing sign, petitioner essentially erected a new sign. Thus, petitioner's "new" sign was subject to the permitting process set up by these sections. I do not agree that the Department can only regulate signs "permitted" under N.C.G.S. sections 136-129, 136-129.1, 136-129.2. The Department is given, both directly and implicitly, the authority to determine which signs meet the requirements set forth in these sections and which signs do not. The power to make this determination in essence is the power to regulate.

The language of a statute will be construed, whenever possible, "so as to avoid an absurd consequence." *State v. Spencer*, 276 N.C. 535, 547, 173 S.E.2d 765, 773 (1970). It is absurd to conclude that the Legislature intended to permit advertisers to circumvent the purposes of the Outdoor Advertising Control Act by converting old, nonconforming signs into new signs thereby avoiding regulation of these "new" signs. This would allow the unending converting of all existing nonconforming signs into "new" signs. Under the majority opinion, these new signs could be erected in different locations, be of increased or decreased size, the same or another message, and of any shape and construction. This would be the ultimate loophole for roadside advertising. For those who believe:

APPALACHIAN POSTER ADVERTISING CO. v. HARRINGTON

[120 N.C. App. 72 (1995)]

> I think that I shall never see
> A billboard lovely as a tree
> Indeed, unless the billboards fall
> I'll never see a tree at all
>                    Ogden Nash, *Song of the Open Road,*

the majority is bad news indeed. Since I find the above issue not to be dispositive, I necessarily address the remaining issues: (1) whether the trial court erred in upholding the decision of the Secretary of Transportation; (2) whether the pertinent regulations are unconstitutionally vague; and (3) whether the regulations are an unconstitutional delegation of legislative power. I find all of petitioner's arguments on these issues unpersuasive.

The General Assembly enacted the Outdoor Advertising Control Act ("OACA") in 1967 in order, *inter alia,* "to promote the safety, health, welfare, and convenience and enjoyment of travel on and protection of the public investment in highways within the State.", N.C.G.S. § 136-127 (1993). The OACA authorizes the Department to promulgate rules and regulations regarding outdoor advertising. *See* N.C.G.S. § 136-130 (1993). The regulations which applied at the time of the revocation and which were applied by the trial court in its *de novo* review provided in pertinent part:

> Any valid permit issued for a lawful outdoor advertising structure shall be revoked by the appropriate district engineer for any one of the following reasons:
>
> * * * *
>
> (6) any alteration of a nonconforming sign or a sign conforming by virtue of the grandfather clause which would cause it to be *other than substantially the same* as it was on the date of issuance of a valid permit; examples of alterations which are not allowed for nonconforming signs or signs conforming by virtue of the grandfather clause include: extension, enlargement, replacement, rebuilding, re-erecting or addition of illumination;
>
> * * * *
>
> (12) abandonment, discontinuance, or destruction of a sign; . . . .

N.C. Admin. Code tit. 19A r. 2E.0210 (August 1986) (emphasis added).

Petitioner first contends the trial court erred by finding and concluding the sign was substantially changed. I disagree.

APPALACHIAN POSTER ADVERTISING CO. v. HARRINGTON

[120 N.C. App. 72 (1995)]

We have previously interpreted "substantially" as used in this regulation to mean " 'essentially, in the main, or for the most part' " and as " '[i]n a substantial manner, in substance, essentially.' " *Appalachian Poster Advertising Co. v. Bradshaw*, 65 N.C. App. 117, 121, 308 S.E.2d 764, 766 (1983) (internal citations omitted). "Substantially" does not mean "an accurate or exact copy." *Id.*

The sign in *Bradshaw* underwent the following alterations: (1) the dimensions had changed from 25 feet by 12 feet to 30 feet by 10 feet; (2) the height of the poles increased from 20 feet to 30 feet; and (3) the number of poles increased from three to four. *Id.* at 118, 308 S.E.2d at 765. The wording on the face of the sign was not changed, although it was rearranged, and the advertiser remained the same. *Id.* After the changes, the sign retained the same square footage and remained in the same location. *Id.* at 121, 308 S.E.2d at 766. In light of these facts, we affirmed the trial court's holding that the changes to the sign were not substantial.

The facts here are distinguishable from those in *Bradshaw*, and I would affirm the trial court's finding that the changes were "substantial." First, the sign here was completely replaced, distinguishing it from the sign in *Bradshaw*. The original facing of the sign was removed and taken to petitioner's shop where it was repainted and altered to conform with the requirements of a new advertiser. New cross braces were added to the sign. Petitioner also replaced the support poles with new ones which were three feet taller. The whole structure was moved three to five feet farther from the highway. The dimensions were changed and the square footage altered. These changes are much more significant than those found not substantial in *Bradshaw*. As such, these changes constitute "replacement, rebuilding, and re-erecting," alterations prohibited by N.C. Admin. Code tit. 19A r. 2E.0210(6). The changes to the sign also violated N.C. Admin. Code tit. 19A r. 2E.0210(12). Petitioner destroyed and discontinued the permitted sign and replaced it with the new creation. Instead of making repairs to an existing sign, petitioner erected an entirely new sign in a new location.

The trial court's review of the decision of the Secretary of Transportation is without a jury and is *de novo*. N.C.G.S. § 136-134.1 (1993). The court may affirm the decision, or the court may reverse or modify the decision if it finds the decision to be: (1) in violation of a constitutional provision; or (2) not made in accordance with the OACA or the rules or regulations promulgated by the Department; or

(3) affected by other error of law. *Id.* The standard by which this court reviews the findings of fact of a trial court sitting without a jury is whether any competent evidence exists in the record to support the findings. *Hollerbach v. Hollerbach*, 90 N.C. App 384, 387, 368 S.E.2d 413, 415 (1988).

The trial court in the present case made the following pertinent finding of fact:

> 8. The new sign structure had all new support poles, a new cross bracing and an entirely new sign face. The dimensions of the new structure had different dimensions from the originally permitted nonconforming sign. The dimensions of the original sign were 35 feet in length and 20 feet in height. The new sign's dimensions are 47 and 1/2 feet in length and 14 feet in height. The shape of the sign had changed due to the difference in the dimensions of the original sign and the new sign. The new sign was located in a different location approximately three to five feet behind the location of petitioner's originally permitted sign. The words on the sign face changed from the original sign face to the new sign face.

There is sufficient evidence in the record to support this finding and the other findings of fact. In turn, the findings support the court's conclusions of law, succinctly stated in conclusion number six:

> 6. The Secretary properly upheld the District Engineer's revocation of petitioner's permit due to discontinuance of the original sign and due to substantial alteration of the originally permitted nonconforming sign which caused it to be other than substantially the same as it was on the date the permit was issued, and that decision was in accordance with the Outdoor Advertising Control Act and rules and regulations promulgated by the Board of Transportation thereto.

We agree that the sign, as altered, was not substantially the same as when the permit was issued. The trial court properly upheld the decision of the Secretary of Transportation to revoke petitioner's permit.

Petitioner also contends it was denied due process of law because N.C. Admin. Code tit. 19A r.2E.0210(6) is unconstitutionally void for vagueness. I disagree. " . . . [A] statute is void for vagueness if its terms are so vague, indefinite, and uncertain that a person cannot determine its meaning and therefore cannot determine how to order his behavior to meet its dictates." *Nestler v. Chapel Hill/Carrboro City Schools Bd. of Educ.*, 66 N.C. App. 232, 238, 311

S.E.2d 57, 60, *disc. review denied*, 310 N.C. 745, 315 S.E.2d 703 (1984). Our previous definition in *Bradshaw* of "substantially" as used in N.C. Admin. Code tit. 19A r.2E.0210(6) demonstrates that the regulation is not vague, indefinite or uncertain. Requiring the owner of an outdoor advertising sign to maintain the sign "essentially, in the main, or for the most part" as it was when it became nonconforming gives sufficient notice for the ordinary, reasonable and prudent person to avoid revocation of the permit. Further, the regulation gives examples of changes deemed to be "substantial." The regulation is not unconstitutional.

Petitioner next argues the regulation in question is void, asserting that the regulations are the result of an unconstitutional delegation of legislative power. Specifically, petitioner contends the General Assembly failed to set forth sufficient standards for the control of billboards by which the Department may be guided in adopting the rules and regulations in questions. I do not agree.

The process of determining whether an act unconstitutionally delegates authority to an agency was set forth in explicit detail by Justice Huskins for our Supreme Court in *Adams v. Dept. of N.E.R.*, 295 N.C. 683, 696-98, 249 S.E.2d 402, 410-11 (1978). Without repeating all the criteria there, I simply note that "the primary sources of legislative guidance" are "the declarations by the General Assembly of the legislative goals and policies which an agency is to apply when exercising its delegated powers." *Id.*, 295 N.C. at 698, 249 S.E.2d at 411. The declaration of policy for the Outdoor Advertising Control Act is found in N.C.G.S. section 136-127 (1993):

The General Assembly hereby finds and declares that outdoor advertising is a legitimate commercial use of private property adjacent to roads and highways but that the erection and maintenance of outdoor advertising signs and devices in areas in the vicinity of the right-of-way of the interstate and primary highways within the State should be controlled and regulated in order to promote the safety, health, welfare and convenience and enjoyment of travel on and protection of the public investment in highways within the State, to prevent unreasonable distraction of operators of motor vehicles and to prevent interference with the effectiveness of traffic regulations and to promote safety on the highways, to attract tourists and promote the prosperity, economic well-being and general welfare of the State, and to preserve and enhance the natural scenic beauty of the highways and

areas in the vicinity of the State highways and to promote the reasonable, orderly and effective display of such signs, displays and devices. *It is the intention of the General Assembly to provide and declare herein a public policy an statutory basis for the regulation and control of outdoor advertising.*

(Emphasis added). The section of the General Statutes following § 136-127 provides for limitation of outdoor advertising devices (§ 136-129); limitations of advertising beyond 660 feet (§ 136-129.1); limitations of advertising adjacent to scenic highways, State and National Parks, and historic areas (§ 136-129.2); removal of existing non-conforming advertising (§ 136-131); a permitting process (§ 136-133); and judicial review of final administrative decisions (§ 136-134.1). Further, N.C. Gen. Stat. § 136-130 specifically authorizes the Department to promulgate rules and regulations governing §§ 136-129, -129.1, -129.2 and -133.

The declarations of findings and goals set forth in § 136-127 and the provisions of the sections referenced above are as specific as reason requires and give adequate guidance to the Department in implementing its delegated powers. I would find these regulations a rational, reasonable and constitutional delegation of legislative power.

I would affirm the judgment in all respects.