WALTER POWELL, SR., Petitioner v. NORTH CAROLINA DEPARTMENT OF TRANS-
PORTATION, Respondent

No. COA10-490

(Filed 18 January 2011)

## 1. Administrative Law— Department of Transportation—delegation of authority—lawful

Petitioner's argument that the General Assembly's delegation of authority to the Department of Transportation to promulgate rules regarding punishment was unlawful because adequate standards were not provided was overruled. The argument had already been rejected by the Supreme Court in 343 N.C. 303.

POWELL v. N.C. DEP'T OF TRANSP.

[209 N.C. App. 284 (2011)]

**2. Administrative Law— Department of Transportation—billboard permit revocation—insufficient connection between cutting vegetation and billboard**

The superior court erred in granting summary judgment in favor of the Department of Transportation (DOT) in an action concerning the revocation of petitioner's billboard permit. The DOT's final agency decision failed to show a sufficient connection between the cutting of vegetation by agents or employees of petitioner's son and the erection or maintenance of the billboard.

**3. Appeal and Error— preservation of issues—failure to raise constitutional issue at trial**

Petitioner's argument that the Department of Transportation's revocation of his billboard permit violated his due process rights was dismissed where petitioner failed to raise the constitutional issue at trial.

**4. Administrative Law— Department of Transportation—billboard permit revocation—insufficient connection between persons who cut vegetation and petitioner**

The superior court erred in granting summary judgment in favor of the Department of Transportation (DOT) in an action concerning the revocation of petitioner's billboard permit. The DOT failed to show a sufficient connection between those persons who cut the vegetation and petitioner.

Appeal by petitioner from judgment entered 11 January 2010 by Judge Henry W. Hight, Jr., in Wake County Superior Court. Heard in the Court of Appeals 2 November 2010.

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Craig D. Justus, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Ebony J. Pittman, for respondent-appellee North Carolina Department of Transportation.*

BRYANT, Judge.

Where adequate standards are provided, the General Assembly's delegation of authority to the Department of Transportation ("DOT")

to promulgate rules regulating outdoor advertising is not unlawful. Where a party does not raise his constitutional arguments in the trial court, they will not be considered on appeal. However, where DOT's final agency decision fails to show a sufficient connection between those persons who violated its rules and the petitioner whose permit was revoked, the superior court errs in granting summary judgment to DOT. Further, where a superior court's decision to affirm a final agency decision following de novo review is based on an unsupported finding of DOT, it is error.

*Facts*

Respondent DOT has responsibility for maintaining right of way areas alongside our State's interstate highways. Petitioner Walter Powell, Sr., is the owner of an outdoor advertising sign, or billboard, located on his approximately twenty-seven acre property along Interstate 95 in Johnston County, North Carolina. In 2004, petitioner obtained a permit to erect a billboard on the property and, thereafter, constructed same in compliance with all state and local regulations. Petitioner's property is also the site of Big Boy's Truck Stop, a business operated by WLP Enterprises, Inc., a North Carolina corporation in which petitioner is the sole shareholder. Petitioner's son, Walter Powell, Jr., is an employee of the truck stop, managing its day-to-day operations. The billboard on petitioner's property does not advertise the truck stop and has no connection to it other than being located on the same piece of property. Neither the truck stop nor Powell, Jr., has any rights or responsibilities for the use or maintenance of the billboard.

In April 2007, Powell, Jr., on behalf of the truck stop, hired a contractor to clear brush from various parts of the property, including thick vines and saplings on DOT's right of way along a bank below I-95, in order to improve the truck stop's visibility to passing motorists. The brush clearing was not related to the billboard and petitioner was not aware of its taking place. On 25 April 2007, DOT employee Ted Sherrod saw the contractors clearing brush and, after determining Powell, Jr., had hired them, called Powell, Jr., and informed him that this was a violation of DOT rules. By letter of 24 May 2007, DOT sent petitioner a notice of violation relating to alleged "illegal destruction of trees, vegetation and control access fencing located on the state-owned right of way[.]" Powell, Jr., responded on behalf of the truck stop, taking responsibility for the cutting and offering to pay for any damages. By letter dated 21 December 2007,

POWELL v. N.C. DEP'T OF TRANSP.

[209 N.C. App. 284 (2011)]

DOT revoked petitioner's billboard permit citing Title 19A of the North Carolina Administrative Code Rule 2E .0210(11), which provides a permit shall be revoked when there has been destruction of vegetation on a state-owned right of way without DOT permission that

> was conducted by one of more of the following: the sign owner, the permit holder, the lessee or advertiser employing the sign, the owner of the property upon which the sign is located, or any of their employees, agents, assigns, including, but not limited to, independent contractors hired by the permit holder/sign owner, the lessee/agents or advertiser employing the sign, or the owner of the property upon which the sign is located[.]

19A N.C.A.C. 2E.0210(11)(c) (2009). Petitioner pursued an administrative appeal, arguing that he was unaware of the actions of his son and did not in any way authorize the brush clearing. On 22 May 2008, DOT issued a final agency decision affirming the revocation of petitioner's permit. Petitioner then sought judicial review in Wake County Superior Court. On 4 December 2009, DOT moved for summary judgment, and the parties stipulated that petitioner orally moved for the same in open court at the 14 December 2009 hearing on .DOT's motion. By order entered 11 January 2010, the superior court denied petitioner's motion for summary judgment, granted DOT's motion for summary judgment, and affirmed DOT's final agency decision revoking petitioner's permit. Petitioner appeals.

On appeal, petitioner contends that the trial court erred in denying summary judgment to him and granting summary judgment to respondent. In support of this contention, petitioner presents five arguments: (I) any delegation of punishment authority by the General Assembly to DOT was unlawful, (II) DOT acted in excess of its statutory authority, (III) revocation of petitioner's permit violated his Due Process rights, (IV) DOT did not follow 19A N.C. Admin. Code 2E.0210(11), and (V) DOT's action was arbitrary and capricious as a matter of law.

## Standards of Review

Article 11 of Chapter 136 of the North Carolina General Statutes is entitled the Outdoor Advertising Control Act ("OACA") and governs various matters related to billboards. Section 136-134.1 sets forth the procedures for judicial review by persons aggrieved by a final agency decision under the OACA issued by DOT through the Secretary of Transportation.

Under G.S. § 136-134.1 . . ., an appellant from the decision and order of the Department of Transportation has the right to a hearing *de novo* in the Superior Court of Wake County; therefore, appellant is not limited to the administrative record.

Although the scope of review *de novo* is broad, the superior court may take action only if the agency decision is (1) [i]n violation of constitutional provisions; or (2) not made in accordance with [the OACA or the regulations thereunder]; or (3) affected by other error of law. Thus, the superior court has the implied power to reverse when the evidence does not support the decision.

*Ace-Hi, Inc. v. Department of Transp.*, 70 N.C. App. 214, 216, 319 S.E.2d 294, 296 (1984) (internal quotation marks and citations omitted). Thus, the superior court is not bound by the agency's findings of fact and conclusions of law and may reach a different conclusion based upon the same evidence. *Appalachian Poster Adv. Co. v. Bradshaw*, 65 N.C. App. 117, 120, 308 S.E.2d 764, 766 (1983).

On appeal from a grant of summary judgment by the superior court under the OACA,

this Court must review the whole record to determine (1) whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) whether the moving party is entitled to judgment as a matter of law.

*Capital Outdoor, Inc. v. Tolson*, 159 N.C. App. 55, 58, 582 S.E.2d 717, 720 (citation omitted), *disc. review denied*, 357 N.C. 504, 587 S.E.2d 662 (2003).

*I*

[1] Petitioner argues that the General Assembly's delegation of authority to DOT to promulgate rules regarding punishment was unlawful because adequate standards were not provided. We disagree.

In a dissent adopted by the Supreme Court, this argument by petitioner has already been rejected:

Specifically, [the] petitioner contends the General Assembly failed to set forth sufficient standards for the control of billboards by which [DOT] may be guided in adopting the rules and regulations in questions. [sic] I do not agree.

**POWELL v. N.C. DEP'T OF TRANSP.**

[209 N.C. App. 284 (2011)]

The process of determining whether an act unconstitutionally delegates authority to an agency was set forth in explicit detail by Justice Huskins for our Supreme Court in *Adams v. Dept. of N.E.R.*, 295 N.C. 683, 696-98, 249 S.E.2d 402, 410-11 (1978). Without repeating all the criteria there, I simply note that "the primary sources of legislative guidance" are "the declarations by the General Assembly of the legislative goals and policies which an agency is to apply when exercising its delegated powers." *Id.*, 295 N.C. at 698, 249 S.E.2d at 411. The declaration of policy for the Outdoor Advertising Control Act is found in N.C.G.S. section 136-127 (1993):

> The General Assembly hereby finds and declares that outdoor advertising is a legitimate commercial use of private property adjacent to roads and highways but that the erection and maintenance of outdoor advertising signs and devices in areas in the vicinity of the right-of-way of the interstate and primary highways within the State should be controlled and regulated in order to promote the safety, health, welfare and convenience and enjoyment of travel on and protection of the public investment in highways within the State, to prevent unreasonable distraction of operators of motor vehicles and to prevent interference with the effectiveness of traffic regulations and to promote safety on the highways, to attract tourists and promote the prosperity, economic well-being and general welfare of the State, and to preserve and enhance the natural scenic beauty of the highways and areas in the vicinity of the State highways and to promote the reasonable, orderly and effective display of such signs, displays and devices. *It is the intention of the General Assembly to provide and declare herein a public policy a statutory basis for the regulation and control of outdoor advertising.*

(Emphasis added). The section of the General Statutes following § 136-127 provides for limitation of outdoor advertising devices (§ 136-129); limitations of advertising beyond 660 feet (§ 136-129.1); limitations of advertising adjacent to scenic highways, State and National Parks, and historic areas (§ 136-129.2); removal of existing non-conforming advertising (§ 136-131); a permitting process (§ 136-133); and judicial review of final administrative decisions (§ 136-134.1). Further, N.C.Gen.Stat. [sic] `§ 136-130 specifically authorizes the Department to promulgate rules and regulations governing §§ 136-129, -129.1, -129.2 and -133.

The declarations of findings and goals set forth in § 136-127 and the provisions of the sections referenced above are as specific as reason requires and give adequate guidance to the Department in implementing its delegated powers. I would find these regulations a rational, reasonable and constitutional delegation of legislative power.

*Appalachian Poster Adv. Co. v. Harrington*, 120 N.C. App. 72, 83-84, 460 S.E.2d 887, 893 (1995) (Lewis, J. dissenting), *reversed and remanded for the reasons stated in the dissent*, 343 N.C. 303, 469 S.E.2d 554 (1996) (per curiam). Thus, petitioner's argument is overruled.

*II*

**[2]** Petitioner also argues that the superior court erred in granting summary judgment to DOT because the agency exceeded its statutory authority in revoking his permit for actions unrelated to his billboard. Specifically, petitioner asserts that there is not a sufficient nexus between billboard erection and maintenance and the clearing of vegetation from the right of way here to allow DOT authority to revoke its permit. We reject petitioner's argument that DOT cannot under any circumstance revoke permits for the destruction of vegetation on its right of way. However, we agree that summary judgment for DOT was not proper here.

"In construing the laws creating and empowering administrative agencies, as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished." *State ex rel. Comr. of Ins. v. North Carolina Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d 547, 561, *reh'ing denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). "The best indicia of that legislative purpose are the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Id.* (internal quotation marks and citation omitted). The General Assembly has made clear its intent in enacting the OACA:

The General Assembly hereby finds and declares that outdoor advertising is a legitimate commercial use of private property adjacent to roads and highways but that the erection and maintenance of outdoor advertising signs and devices in areas in the vicinity of the right-of-way of the interstate and primary highway systems within the State should be controlled and regulated in order to promote the safety, health, welfare and convenience and enjoyment of travel on and protection of the public investment in

highways within the State, to prevent unreasonable distraction of operators of motor vehicles and to prevent interference with the effectiveness of traffic regulations and to promote safety on the highways, to attract tourists and promote the prosperity, economic well-being and general welfare of the State, and to preserve and enhance the natural scenic beauty of the highways and areas in the vicinity of the State highways and to promote the reasonable, orderly and effective display of such signs, displays and devices. *It is the intention of the General Assembly to provide and declare herein a public policy and statutory basis for the regulation and control of outdoor advertising.*

N.C. Gen. Stat. § 136-127 (2009) (emphasis added). The OACA specifically provides DOT with the authority to promulgate rules and regulations concerning:

(1) outdoor advertising signs along the right-of-way of interstate or primary highways in this State; (2) "the specific requirements and procedures for obtaining a permit for outdoor advertising as required in [N.C. Gen. Stat.] § 136-133"; and (3) "for the administrative procedures for appealing a decision at the agency level to refuse to grant or in revoking a permit previously issued."

*Nat. Adv. Co. v. Bradshaw*, 48 N.C. App. 10, 16-17, 268 S.E.2d 816, 820, (quoting N.C. Gen. Stat. § 136-130) (internal quotation marks omitted) *appeal dismissed and disc. review denied*, 301 N.C. 400, 273 S.E.2d 446 (1980). Section 136-133 governs the permit at issue here and provides, in pertinent part:

No person shall erect or maintain any outdoor advertising within 660 feet of the nearest edge of the right-of-way of the interstate or primary highway system, . . ., without first obtaining a permit from the Department of Transportation or its agents pursuant to the procedures set out by rules adopted by the Department of Transportation. *The permit shall be valid until revoked for nonconformance with this Article or rules adopted by the Department of Transportation.*

N.C. Gen. Stat. § 136-133(a) (2009) (emphasis added). Thus, DOT's authority under the OACA is no more and no less than regulation and control of outdoor advertising, including controlling permits for the erection and maintenance of billboards.

Under this grant of authority from the General Assembly, DOT has enacted various agency rules governing billboard permit

procedures. Relevant to this appeal, Rule 2E.0210 covers revocation of previously issued billboard permits on various grounds and provides:

> The appropriate district engineer shall revoke a permit for a lawful outdoor advertising structure based on any of the following:
>
> (1) mistake of facts by the issuing District Engineer for which had the correct facts been known, he would not have issued the outdoor advertising permit;
>
> (2) misrepresentations of any facts made by the permit holder/sign owner and on which the District Engineer relied in approving the outdoor advertising permit application;
>
> (3) misrepresentation of facts to any regulatory authority with jurisdiction over the sign by the permit holder/sign owner, the permit applicant or the owner of property on which the outdoor advertising structure is located;
>
> (4) failure to pay annual renewal fees or provide the documentation requested under Rule .0207(c) of this Section;
>
> (5) failure to construct the outdoor advertising structure except all sign faces within 180 days from the date of issuance of the outdoor advertising permit;
>
> (6) a determination upon initial inspection of a newly erected outdoor advertising structure that it fails to comply with the Outdoor Advertising Control Act or the rules in this Section;
>
> (7) any alteration of an outdoor advertising structure for which a permit has previously been issued which would cause that outdoor advertising structure to fail to comply with the provisions of the Outdoor Advertising Control Act or the rules adopted by the Board of Transportation pursuant thereto;
>
> (8) alterations to a nonconforming sign or a sign conforming by virtue of the grandfather clause other than reasonable repair and maintenance as defined in Rule .0225(c). For purposes of this subsection, alterations include, but are not limited to:
>
>> (a) enlarging a dimension of the sign facing, or raising the height of the sign;
>>
>> (b) changing the material of the sign structure's support;

(c) adding a pole or poles; or

(d) adding illumination;

(9) failure to affix the emblem within as required by [Rule] .0208 of this Section or failure to maintain the emblem so that it is visible and readable from the main-traveled way or controlled route;

(10) failure to affix the name of the person, firm, or corporation owning or maintaining the outdoor advertising sign to the sign structure in sufficient size to be clearly visible as required by [Rule] .0208 of this Section;

(11) *destruction or cutting of trees, shrubs or other vegetation located on the state-owned or maintained right of way where an investigation by the Department of Transportation reveals that the destruction or cutting:*

> *(a) occurred on the state-owned or maintained right of way within 500 feet on either side of the sign location along the edge of pavement of the main traveled way of the nearest controlled route;*

> *(b) was conducted by a person or persons other than the Department of Transportation or its authorized agents or assigns, or without permission from the Department of Transportation; and*

> *(c) was conducted by one or more of the following: the sign owner, the permit holder, the lessee or advertiser employing the sign, the owner of the property upon which the sign is located, or any of their employees, agents or assigns, including, but not limited to, independent contractors hired by the permit holder/sign owner, the lessee/agents or advertiser employing the sign, or the owner of the property upon which the sign is located;*

(12) unlawful use of a controlled access facility for purposes of repairing, maintaining or servicing an outdoor advertising sign where an investigation reveals that the unlawful violation:

> (a) was conducted actually or by design by the sign owner/permit holder, the lessee or advertiser employing the sign, the owner of the property upon which the sign is located, or any of their employees, agents, or assigns, including,

but not limited to, independent contractors hired by any of the above persons; and,

(b) involved the use of highway right of way for the purpose of repairing, servicing, or maintaining a sign including stopping, parking, or leaving any vehicle whether attended or unattended, on any part or portion of the right of way; or

(c) involved crossing the control of access fence to reach the sign structure;

(13) maintaining a blank sign for a period of 12 consecutive months;

(14) maintaining an abandoned, dilapidated, or discontinued sign;

(15) a sign that has been destroyed or significantly damaged as determined by [Rules] .0201(8) and (29) of this Section;

(16) moving or relocating a nonconforming sign or a sign conforming by virtue of the grandfather clause which changes the location of the sign as determined by [Rule] .0201(27) of this Section;

(17) failure to erect, maintain, or alter an outdoor advertising sign structure in accordance with the North Carolina Outdoor Advertising Control Act, codified in G.S. 136, Article 11, and the rules adopted by the Board of Transportation.

19A N.C.A.C. 2E.0210 (emphasis added).

Petitioner's permit was revoked for a violation under subsection (11) based on the destruction of vegetation on the right of way. We note that subsection 11, unlike each of the other grounds for revocation listed, does not specify any connection between the permitted billboard and the act or omission constituting a violation except for proximity (i.e., the vegetation cut must be "within 500 feet on either side of the sign location along the edge of pavement of the main traveled" road). One could imagine that in some factual circumstances, the destruction of vegetation within 500 feet of a permitted billboard would be related to the erection and maintenance of the billboard. For example, cutting trees on the right of way might make the billboard more visible to passing motorists. Cutting overgrown brush or vines near a billboard might facilitate workers' ability to access the billboard for repair or maintenance purposes. Such actions by the persons listed in subsection 11(c) would provide a

connection between violation of DOT's rule and the regulation and control of billboards. Indeed, DOT has chosen to make such a connection explicit in Rule 2E.0211, which governs denial of billboard permits for, *inter alia*, cutting of vegetation on the DOT right of way. Rule 2E.0211 requires a link between the cutting and billboard visibility in denying permits for new signs:

(1) for a period of five years where the unlawful destruction or illegal cutting of vegetation has occurred within 500 feet on either side of the proposed sign location, and as measured along the edge of pavement of the main traveled way of the nearest controlled route. For purposes of this paragraph only:

(A) "Unlawful destruction or illegal cutting" is the destruction or cutting of trees, shrubs, or other vegetation on the state-owned or maintained right of way which was conducted by a person or persons other than the Department of Transportation or its authorized agents or without the permission of the Department of Transportation;

(B) *The Department of Transportation's investigation shall reveal some evidence that the unlawful destruction or illegal cutting would create, increase, or improve a view to a proposed outdoor advertising sign from the main-traveled way of the nearest controlled route;*

19A N.C.A.C. 2E.0211(c) (emphasis added).

Here, the final agency decision does not contain any finding of fact showing a connection between the destruction of vegetation and the billboard. Without such a finding, DOT fails to show that its action was within the scope of its authority under the OACA. In its amended petition for judicial review in superior court, petitioner specifically raised this issue, contending that any destruction of vegetation did not improve visibility of the billboard and was not connected to the use or maintenance of the billboard.

Our review reveals no evidence in the record that could support a finding of a connection between the cutting of vegetation by agents or employees of petitioner's son and the erection or maintenance of the billboard. In his deposition, DOT District Engineer Tim Little stated that there was no evidence that the cutting improved visibility of the billboard or had any connection to its maintenance. Petitioner also submitted an affidavit from Jason Pope, owner of a nursery and landscaping business, which states that Pope is familiar with the

vegetation cut and is of the opinion that the cutting did not improve the billboard's visibility. Thus, the superior court erred in granting summary judgment to DOT, and we reverse and remand for further proceedings in superior court. As part of its de novo hearing, the superior court is not bound by the administrative record and is free to make its own findings and conclusions as necessary to carry out its statutory directive to determine whether the DOT decision was "(1) [i]n violation of constitutional provisions; or (2) [n]ot made in accordance with [the OACA or the regulations thereunder]; or (3) [a]ffected by other error of law." N.C. Gen. Stat. § 136-134.1.

*III*

[3] Petitioner also argues the revocation of his permit violated his due process rights. We dismiss petitioner's argument.

In his brief to this Court, petitioner contends that his due process rights under the United States and North Carolina constitutions were violated because he is being punished for the acts of others. However, in his amended petition ·for judicial review filed in August 2008, petitioner raised due process claims "based upon no adequate standards to protect against arbitrary and unreasoned decisions in administering" DOT's rules under OACA. Thus, petitioner did not give the superior court the opportunity to consider and rule on the specific constitutional argument he now attempts to bring before this Court. "A constitutional issue not raised at trial will generally not be considered for the first time on appeal." *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (per curiam) (citation omitted). This argument is dismissed.

Further, we note that, in order to revoke a permit for violations under the OACA, "DOT must (1) clearly identify persons, (2) who committed a violation for which revocation is permissible, and (3) show a sufficient connection between those persons and the permit holder." *Whiteco Industries, Inc. v. Harrelson*, 111 N.C. App. 815, 820, 434 S.E.2d 229, 233 (1993) (citation omitted), *appeal dismissed and disc. review denied*, 335 N.C. 566, 441 S.E.2d 135 (1994). Thus, even had petitioner properly brought this issue forward on appeal, both DOT's rules and this Court's caselaw would ensure that his permit could only be revoked for actions of persons sufficiently connected to him. We address this argument as part of petitioner's issue IV below.

*IV*

**[4]** Petitioner next argues that the superior court erred in granting summary judgment to DOT because that agency failed to prove that vegetation on the right of way was cut by any party covered in Rule 2E.0210. We agree.

Rule 2E.0210 requires a permit be revoked for destruction of vegetation on the DOT right of way when the action

> was conducted by one of more of the following: the sign owner, the permit holder, the lessee or advertiser employing the sign, the owner of the property upon which the sign is located, or any of their employees, agents, assigns, including, but not limited to, independent contractors hired by the permit holder/sign owner, the lessee/agents or advertiser employing the sign, or the owner of the property upon which the sign is located[.]

19A N.C.A.C. 2E.0210(11)(c). In determining whether there has been a violation of an outdoor advertising regulation sufficient to support a permit revocation, this Court has held "DOT must (1) clearly identify persons, (2) who committed a violation for which revocation is permissible, and (3) show a sufficient connection between those persons and the permit holder." *Whiteco Industries, Inc.*, 111 N.C. App. at 820, 434 S.E.2d at 233. Our review of the final agency decision indicates that DOT failed to comply with the third requirement under *Whiteco Industries, Inc.*, because a crucial finding of fact is not supported by competent evidence. Finding of fact 1 in DOT's final agency decision states, in pertinent part, "Mr. Walter Powell, [sic] owns an outdoor advertising structure located adjacent to I-95 at mile marker [sic] in Johnston County." This finding is fully supported by evidence in the record. However, finding of fact 5 states:

> In response to the Notice of Violation, Mr. Powell wrote a letter to District Engineer Little dated May 31, 2008 wherein he admitted to hiring persons to cut vegetation on State[-]owned property, accepted responsibility for "destruction of the vegetation" and acknowledged being aware of "guidelines" for vegetation removal. (Exhibit C)

This finding of fact is not supported by any evidence in the record, as revealed by examination of the letter in question. Exhibit C is a letter written *not* by petitioner Walter Powell, Sr., permit holder and the "Mr. Powell" referred to in finding of fact 5, but by his son, Walter Powell, *Jr.* Powell, Jr., is the only party who has acknowledged any

responsibility for hiring the contractors who cut the vegetation in question. The final agency decision makes no reference to Powell, Jr., and does not connect him or his decision to order cutting of vegetation to his father, petitioner. It appears that DOT may have been acting under the mistaken belief that petitioner, rather than his son, had acknowledged ordering the vegetation to be cut. Because DOT made no finding that the destruction of vegetation was performed or ordered by a person listed in or subject to Rule 2E.0210(11), the agency failed to "show a sufficient connection between those persons [who cut the vegetation] and the permit holder." *Id.*

As previously noted, in its de novo review, the superior court is not bound by the agency's findings and conclusions but may reach a different conclusion based upon the same evidence. *Appalachian Poster Adv. Co.*, 65 N.C. App. at 120, 308 S.E.2d at 766. Here, no evidence in the record supported DOT's finding of fact 5. Yet, "[r]ather than make or order new findings, however, the trial court granted summary judgment to [] DOT. It ruled that [] DOT was 'entitled to a judgment as a matter of law [and upheld the decision of DOT],' which decision and order contained the unsupported finding." *Ace-Hi, Inc.*, 70 N.C. App. at 216-17, 319 S.E.2d at 296. A superior court's decision to affirm an agency decision based on unsupported findings of DOT is error. *Id.* at 217, 319 S.E.2d at 296.

Because the superior court erred in granting summary judgment to DOT, we reverse and remand for further proceedings in the superior court. As part of its de novo hearing, the superior court is not bound by the administrative record and is free to make its own findings and conclusions as necessary to carry out its statutory directive to determine whether the DOT decision was "(1) [i]n violation of constitutional provisions; or (2) [n]ot made in accordance with [the OACA or the regulations thereunder]; or (3) [a]ffected by other error of law." N.C.G.S. § 136-134.1.

*V*

Petitioner also argues that DOT's revocation of his permit was arbitrary and capricious. Because we reverse and remand as discussed *supra*, we need not address this argument.

Reversed and remanded.

Judges STROUD and BEASLEY concur.