IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-992

 Filed: 6 August 2019

Guilford County, Nos. 17-CvS-9423, 17-CvS-9539, 17-CvS-9540, 17-CvS-9673-74

IN THE MATTER OF CUSTODIAL LAW ENFORCEMENT RECORDING SOUGHT
BY CITY OF GREENSBORO

 Appeal by Plaintiff from order entered 23 February 2018 by Judge Susan Bray

in Guilford County Superior Court. Heard in the Court of Appeals 8 May 2019.

 Fox Rothschild LLP, by Patrick M. Kane and Kip David Nelson, and City of
 Greensboro Attorney’s Office, by Rosetta Davidson Davis, for Petitioner-
 Appellant City of Greensboro.

 Rossabi Reardon Klein Spivey PLLC, by Gavin J. Reardon and Amiel J.
 Rossabi, for Other-Appellee Involved Greensboro Police Officers.

 Julius L. Chambers Center for Civil Rights, by Mark Dorosin and Elizabeth
 Haddix, ACLU of North Carolina Legal Foundation, by Christopher A. Brook,
 and Tin, Fulton, Walker & Owen, PLLC, by S. Luke Largess and Cheyenne N.
 Chambers, for Amici Curiae.

 DILLON, Judge.

 Petitioner City of Greensboro (the “City”) appeals from the trial court’s order

denying its Motion to Modify Restrictions placed on Greensboro city council members,

which allowed them to view certain recordings from body cameras (“body-cams”) worn

by Greensboro Police Department officers, but which limited their ability to discuss

the recordings in a public setting. The City contends that the trial court’s restrictions

interfere with the city council members’ fundamental responsibilities to their
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

constituents and violate council members’ First Amendment rights. After careful

consideration, we affirm.

 I. Background

 This case arises from a 10 September 2016 incident in downtown Greensboro,

resulting in the arrest of several individuals by Greensboro police officers (the

“Officers”). The parties to this action are the City and the Officers.

 Video footage of the incident was recorded by the Officers’ body-cams. The City

petitioned the footage be made available to members of its City council to view.

 In January 2018, the trial court entered orders (the “Release Orders”) allowing

members of the City’s governing council and certain other City officials to view the

body-cam footage, but subject to a limited gag order, as follows: those City officials

choosing to view the footage would not be allowed to discuss the footage except

amongst themselves in the performance of their official duties. This Release Order

further provided that any violation of the gag order would subject the offender to a

fine of up to five hundred dollars ($500.00) and imprisonment of up to thirty (30) days.

The Release Order, though, allowed the City Attorney to seek modification of the gag

order in the future.

 The following month, in February 2018, the City moved to lift the gag order, to

allow its officials to discuss the body-cam footage with their constituents and others.

 -2-
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

After a hearing on the matter, the trial court entered orders denied the City’s motions

for modification (the “Modification Denial Order”).

 The City appealed.1

 II. Analysis

 On appeal, the City argues that the trial court committed error by refusing to

remove the gag order. We disagree.

 In conducting our review, we will first assess the initial validity of the

restriction in the Release Orders under the First Amendment.

 Our General Assembly has provided that police body-cam footage is neither a

public nor a personnel record, N.C. Gen. Stat. § 132-1.4A(b) (2016), and that only

those depicted in the video and their personal representatives have an absolute right

to view the footage, N.C. Gen. Stat. § 132-1.4A(c) (2016). The General Assembly also

provided that anyone else wanting to view police body-cam footage may not do so

unless that individual obtains a court order. N.C. Gen. Stat. § 132-1.4A(g) (2016).

And “[i]n determining whether to order the release of all or a portion of the recording,

in addition to any other standards [it] deems relevant,” the court must consider the

applicability of eight standards in making its decision, as follows:

 (1) Release is necessary to advance a compelling public

 1 The Officers contend that the Modification Denial Order and the initial Release Orders are
interlocutory because they left open the possibility of future modification once City officials actually
viewed the body-cam footage. However, alongside its appeal, the City has filed a petition for writ of
certiorari. To the extent that the City has no right to appeal the orders before us, we grant the City’s
petition for writ of certiorari to aid our jurisdiction. See N.C. R. App. P. 21(a)(1).

 -3-
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

 interest.

 (2) The recording contains information that is otherwise
 confidential or exempt from disclosure or release under
 State or federal law.

 (3) The person requesting release is seeking to obtain
 evidence to determine legal issues in a current or potential
 court proceeding.

 ...

 (5) Release may harm the reputation or jeopardize the
 safety of a person.

 (6) Release would create a serious threat to the fair,
 impartial, and orderly administration of justice.

 (7) Confidentiality is necessary to protect either an active
 or inactive internal or criminal investigation or potential
 internal or criminal investigation.

 (8) There is good cause shown to release all portions of a
 recording.

Id. If a court is inclined to grant a request to release the footage, the court “may place

any conditions or restrictions on the release of the recording that the court, in its

discretion, deems appropriate.” Id. (emphasis added).

 Here, the trial court, in its discretion, deemed it appropriate to place a

“condition or restriction” on the release of the body-cam footage to the City officials;

namely, that the City officials could only discuss the footage amongst themselves in

their official capacities. To support the imposition of this gag order, the trial court

determined that statutory standards #1, 2, 3, 5, 6, 7 and 8 were all applicable.

 -4-
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

Specifically, standards #2, 5, 6 and 7 all support the imposition of the gag order. And

in its Modification Denial Order, the trial court, in its discretion, denied the City’s

motion to lift the gag order.

 In its principal brief to our Court, though, the City made no argument that the

trial court abused its discretion in the manner it considered or weighed the statutory

standards. And it is the City’s burden on appeal to show how the trial court abused

its discretion.2 Rather, the City argues that the gag order impermissibly violates the

First Amendment rights of its council members and, otherwise, impairs their ability

to engage in open government.3 For the following reasons, we disagree.

 The gag order does not violate the City’s First Amendment rights4 because the

gag order only restricts the council’s speech about matters that the council, otherwise,

 2 The City does note in its factual summation that the criminal cases of the two individuals
depicted in the video were no longer pending. And this statement does suggest that standard #7, that
a court must consider whether denying a request for the release of body-cam footage would be
“necessary to protect either an active or inactive internal or criminal investigation[,]” was no longer
applicable. N.C. Gen. Stat. § 132-1.4A(g)(7) (2016). But the City makes no argument that the other
statutory standards supporting the gag order were no longer present. For instance, the City makes
no argument that standard #5, that a public disclosure of the information “may harm the reputation
or jeopardize the safety of [the officers,]” was no longer applicable.
 3 Briefly, for clarity, we elaborate that the City does not challenge the constitutionality of

Section 132-1.4A itself. The City makes no arguments regarding the constitutional validity of keeping
body-cam footage private, requiring court orders for release of the footage, or allowing the imposition
of restrictions for viewing the footage based upon the trial court’s discretion. Rather, the City
challenges the constitutionality of the particular restriction placed on its access to the footage in this
case: an order limiting the city council members’ speech under threat of punishment.
 4 The Officers contend that whether the restriction is unconstitutional under the First

Amendment is not preserved for appeal because the issue was not argued during the trial court’s
hearing on the motions for modification. State v. Lloyd, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001)
(“Constitutional issues not raised and passed upon at trial will not be considered for the first time on
appeal.”). Indeed, our Courts have a policy of not undertaking constitutional questions “except on a

 -5-
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

had no right to discover except by the grace of the legislature through a judicial order.

Indeed, our General Assembly chose not to make body-cam footage a public record.

See N.C. Gen. Stat. § 132-1.4A(b). In so holding, we are guided by the United States

Supreme Court’s opinion in Seattle Times Co. v. Rhinehart, in which that Court held

that a protective order preventing public disclosure of information learned through

discovery in a civil case did not violate the First Amendment. Seattle Times Co. v.

Rhinehart, 467 U.S. 20, 32-37 (1984). In that case, a newspaper was involved in

litigation and sought discovery of financial documents from the other party. The trial

court allowed the discovery, deeming it relevant to the litigation, but otherwise

granted the other party a protective order preventing the newspaper from publishing

the information to the public. The newspaper challenged the protective order,

contending that it had a First Amendment right to publish the information learned

during discovery.

ground definitely drawn into focus by [the movant’s] pleadings.” Hudson v. Atl. Coast Line R. Co., 242
N.C. 650, 667, 89 S.E.2d 441, 453 (1955).
 However, this Court has stated that specific language invoking the constitution is not required
where a constitutional issue is “apparent from the context.” State v. Spence, 237 N.C. App. 367, 371,
764 S.E.2d 670, 674-75 (2014) (holding criminal defendant properly preserved constitutional issue by
making a request that “directly implicate[d]” a constitutional right). In its motion to modify
restrictions, the City repeatedly references the city council members’ inability to properly engage in
discussion and political discourse with their constituents. The City argued the same during the trial
court’s hearing on the matter. And the United States Supreme Court has acknowledged that an
elected representative’s speech to their constituency is guarded by the First Amendment. See Bond v.
Floyd, 385 U.S. 116, 136-37 (1966). The issue of the First Amendment’s affirmative grant of freedom
of speech was “definitely drawn into focus” by the City’s arguments, which “directly implicate” a
government official’s need to speak openly with his or her constituency.

 -6-
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

 The Seattle Times Court disagreed, holding that the protective order did not

violate the newspaper’s First Amendment rights. Essentially, the Court held that

where a person only learns of information through judicial compulsion, the court

compelling disclosure can place restrictions on the further dissemination of that

information, but otherwise cannot generally place restrictions on the dissemination

of information learned by other means:

 As in all civil litigation, petitioners gained the information
 they wish to disseminate only by virtue of the trial court’s
 discovery processes. As the [Civil Procedure] Rules
 authorizing discovery were adopted by the state
 legislature, the processes thereunder are a matter of
 legislative grace. A litigant [otherwise] has no First
 Amendment right of access to [the] information.

 ...

 [I]t is significant to note that an order prohibiting
 dissemination of . . . information [that was only learned
 about through discovery during civil litigation] is not the
 kind of classic prior restraint that requires exacting First
 Amendment scrutiny. As in this case, such a protective
 order prevents a party from disseminating only that
 information obtained through use of the discovery process.
 Thus, the party may disseminate the identical information
 covered by the protective order as long as the information
 is gained through means independent of the court’s
 process.

Id. at 32-34 (internal citation omitted).

 The present case is similar to Seattle Times. Specifically, here, the City has no

First Amendment right to the body-cam footage, but has been given the right to access

 -7-
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

the information through a court order. The gag order only prevents the City from

disseminating information that it has only learned through the court order. The gag

order does not otherwise restrain the City officials from discussing the subject police

encounter generally, only from discussing the body-cam footage specifically.

Therefore, we conclude that the gag order does not impermissibly infringe on the

City’s First Amendment rights.

 In the same way, we conclude that the gag order does not impermissibly impair

the City council’s ability to perform its official duties. Indeed, the City council

members have no right to the information in the first place. The trial court could

have denied the request to view the body-cam footage altogether. The City council

members are still free to discuss any information about the police encounter learned

from other sources with their constituents. Accordingly, we conclude that the trial

court did not exceed its authority in imposing the gag order as a condition of access

to the body-cam footage.

 III. Conclusion

 We conclude that, though the restriction does limit the City council members’

speech, the trial court did not abuse its discretion in initially placing and later

refusing to modify a restriction on release of body-cam footage, as the City officials

otherwise had no right to the information. Much like a protective order under Rule

26(c), the discretionary restrictions allowed by Section 132-1.4A seek to protect the

 -8-
 IN RE CUSTODIAL LAW ENFORCEMENT RECORDING

 Opinion of the Court

interests of those depicted in the information being released. In this case, protecting

the reputation and safety of those individuals, as well as safeguarding the

administration of justice, presents a substantial government interest for which the

trial court’s restrictions are no greater than necessary. The City has failed to meet

its burden of showing that the trial court abused its discretion in determining that

this protection is still not warranted. Therefore, we affirm.

 AFFIRMED.

 Judge ZACHARY concurs.

 Judge BERGER concurs by separate opinion.

 -9-
 No. COA18-992 In re Custodial Law Enforcement Recording Sought by City of
 Greensboro

 BERGER, Judge, concurring in separate opinion.

 I concur with the majority’s analysis. However, appellant’s constitutional

argument was not raised in the trial court. Because appellant presents its First

Amendment argument for the first time on appeal, this matter should be dismissed.

See Powell v. N.C. Dep’t of Transp., 209 N.C. App. 284, 296, 704 S.E.2d 547, 555 (2011)

(“A constitutional issue not raised at trial will generally not be considered for the first

time on appeal.”).